JS-6

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES—GENERAL

| Case No. | **EDCV 20-1449 JGB (KKx)** | Date | October 16, 2020 |
|---|---|---|---|
| Title | ***Justin Bartlett v. All American Asphalt*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **Order (1) GRANTING IN PART and DENYING IN PART Plaintiff's Motion for Remand (Dkt. No. 13); and (2) GRANTING IN PART AND DENYING IN PART Defendant's Motion for Judgment on the Pleadings (Dkt. No. 9) (IN CHAMBERS)**

Before the Court are a Motion for Remand filed by Plaintiff Justin Bartlett ("MTR," Dkt. No. 13) and a Motion for Judgment on the Pleadings filed by Defendant All American Asphalt ("MJP," Dkt. No. 9). The Court finds the motions appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the motions, the Court GRANTS IN PART and DENIES IN PART the Motion for Remand and the Motion for Judgment on the Pleadings.

## I. BACKGROUND

On June 11, 2020, Plaintiff filed his Complaint against Defendant All American Asphalt in the Superior Court of the State of California for the County of Riverside. ("Complaint," Dkt. No. 1-1.) The Complaint alleges thirteen causes of action: (1) associational discrimination; (2) associational harassment; (3) hostile work environment; (4) discrimination based on race; (5) retaliation; (6) failure to prevent harassment, discrimination and retaliation; (7) violation of California Labor Code § 6310; (8) violation of California Labor Code § 6311; (9) violation of California Labor Code § 1102.5; (10) violation of California Labor Code § 98.6; (11) wrongful termination in violation of public policy; (12) violation of California Labor Code § 204; and (13) failure to provide accurate wage statements. (Compl. ¶¶ 43-136.)

On July 21, 2020, Defendant removed the action to federal court, arguing that Plaintiff's claims arise under a Collective Bargaining Agreement and the case is thus removable pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. ("Notice of Removal," Dkt. No. 1.)

Defendant filed the Motion for Judgment on the Pleadings on August 19, 2020, along with a Request for Judicial Notice of the Declaration of Michael Farkas ("Farkas Decl."), including the Collective Bargaining Agreement between All American Asphalt and Plaintiff's union, Laborers Local Union 1184. ("RJN," Dkt. No. 10.) Plaintiff opposed the MJP on August 31, 2020. ("MJP Opposition," Dkt. No. 15.) Defendant filed a reply on September 4, 2020. ("MJP Reply," Dkt. No. 17.)

Plaintiff filed the Motion to Remand on August 20, 2020. Defendant opposed the MTR on August 31, 2020. ("MTR Opposition," Dkt. No. 16.) Plaintiff replied on September 8, 2020. ("MTR Reply," Dkt. No. 18.) The Court took the matters under submission on September 25, 2020. (Dkt. No. 26.)

## II.    FACTUAL ALLEGATIONS

Plaintiff alleges the following facts, which are assumed to be true for purposes of the Motion for Judgment on the Pleadings. Plaintiff Justin Bartlett began his employment with Defendant All American Asphalt in or around October 2004. (Compl. ¶ 11.) He received multiple pay raises throughout his employment. (Id.) In or around 2016, Plaintiff was transferred to Defendant's asphalt plant in Corona, California, which was considered a promotion due to the opportunity to work more days and earn more money. (Id. ¶ 12.)

Plaintiff, a White man, is married to an African American woman, and they have two sons. (Id. ¶ 10.) After a co-worker, John, noticed that Plaintiff's wife was African American, he began to subject Plaintiff to a series of offensive and discriminatory comments. (Id. ¶ 14.) Plaintiff reported the incidents to his supervisor, Foreman Justin McClure, who assured him he would "talk to [John]" but failed to take any action. (Id.) Over a period of months, John continued to make offensive comments about Plaintiff related to his wife's race. (Id. ¶¶ 15-19.) Plaintiff repeatedly complained to his supervisor McClure, but Defendant failed to take any action. (Id.) In January 2019, two other employees overheard John harassing Plaintiff with racist comments and making aggressive threats, and reported the incident to Defendant. (Id. ¶ 20.) An upper management employee and McClure subsequently asked Plaintiff about the incident. (Id. at 21.) Plaintiff replied that he did not want any problems and that he was relying on Defendant to take action and stop the ongoing discrimination. (Id.) Defendant again failed to take any action. (Id. ¶ 22.) The harassment and racial slurs continued, as did Plaintiff's complaints to his supervisor. (Id.)

Two or three days after Plaintiff complained to McClure about John's conduct, Defendant transferred Plaintiff to Defendant's plant in Perris, California. (Id. ¶ 23.) This transfer was financially harmful to Plaintiff because the Perris plant did not have as much steady

work and resulted in a reduction of hours and pay, and the Perris plant was significantly farther from Plaintiff's home.  (Id.)  Defendant took no disciplinary action against John.  (Id.)  After four months at the Perris plant, Plaintiff was transferred back to the Corona plant.  (Id. ¶ 24.)  John continued to harass Plaintiff, threatening his employment and the lives of his children.  (Id. ¶ 25.)  After Plaintiff again reported John's racist conduct to McClure, he was transferred to a less desirable location at Defendant's Irwindale plant.  (Id. ¶ 27.)  While at Irwindale, Plaintiff's supervisor Abraham sent Plaintiff pictures of a Black man, which he found discriminatory and offensive.  (Id. ¶ 28.)

Plaintiff also noticed that he was not being paid for all the hours he worked.  (Id. ¶ 29.)  After Plaintiff complained about the missing hours on his paychecks, he was told not to call the office and that McClure or Abraham would fix it.  (Id.)  Defendant would then pay Plaintiff for his missing hours by adding an extra day or additional hours on his subsequent paychecks, requiring Plaintiff to wait an additional pay period to get paid fully.  (Id.)  Following Plaintiff's complaints about unpaid wages, Foreman Abraham started avoiding any interactions with Plaintiff, and would make disparaging comments, such as "Oh, I heard that you were a problem in Corona too."  (Id. ¶ 30.)  After Plaintiff reported Abraham's disparaging comments to McClure, he was again reassigned to less desirable plant locations in Westminster, Perris, and Irvine.  (Id. ¶ 31.)

Plaintiff was transferred back to the Corona plant in or around October 2019.  (Id. ¶ 32.)  However, he was not assigned to his original position and duties, instead being assigned to a more dangerous area to clean up, merely a few feet from John.  (Id.)  Defendant ordered Plaintiff to perform the work by himself while machines were still running, although government and industry regulations require at least two employees to work in the confined spaces Plaintiff was assigned to and that machines be turned off.  (Id. ¶ 33.)  Plaintiff did not feel safe working in these conditions.  (Id.)  Plaintiff complained to Defendant about their disregard of safety protocols and sent a video of the dangerous conditions to McClure.  (Id. ¶ 34.)  McClure disregarded his concerns, and Plaintiff continued to perform his job.  (Id. ¶¶ 34-35.)

Plaintiff noticed that other employees began to ostracize and avoid him.  Plaintiff alleges that Defendant wanted Plaintiff to quit by making his work environment increasingly unpleasant and hostile.  (Id. ¶ 35.)  In or around February 2020, Plaintiff was transferred to work in the San Fernando Valley facility for two days, before returning to Defendant's Corona plant.  (Id. ¶¶ 36-37.)  Defendant, however, did not pay him the 16 hours he worked at the San Fernando plant in his following paycheck.  (Id. ¶ 37.)  Plaintiff reported the unpaid wages, but did not get paid for those wages until his last paycheck following his termination.  (Id.)

In or around February 2020, Plaintiff was informed that there was no work for him for the following day.  (Id. ¶ 38.)  Plaintiff was confused because everyone else at the plant was working as usual and there was no indication of a slowdown.  (Id. ¶ 38.)  He was then instructed to report to work the following day, when McClure was waiting for him outside the plant with a check.  (Id. ¶ 39.)  McClure told Plaintiff that work was slow and that Defendant was terminating Plaintiff due to "cutbacks."  (Id.)  Plaintiff contacted Defendant's Concrete Foreman Jesse to ask if there

was any work for him in the field. (Id. ¶ 40.) Jesse confirmed that there was work for Plaintiff and attempted to reinstate him, but was unable to do so because Defendant's system read that Plaintiff had been "fired" rather than laid off due to cutbacks. (Id.) Plaintiff contacted Superintendent Todd Simon, who was unable to take any further action to reinstate Plaintiff, claiming his "hands are tied" and that Plaintiff would have to speak to "higher ups" to remove the "termination" status from his file. (Id.) Human Resources confirmed that Plaintiff's file showed that he was "terminated per Danny Stinson…" but refused to disclose to Plaintiff the reason for termination. (Id. ¶ 41.)

## III.  LEGAL STANDARD

### A. Remand

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove a matter to federal court where the district court would have original jurisdiction. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Federal courts have limited jurisdiction, "possessing only that power authorized by Constitution and statute." Gunn v. Minton, 568 U.S. 251, 256 (2013). As such, a defendant may remove civil actions in which a federal question exists or in which complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332.

LMRA § 301 provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). This provision grants a "congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." Matson v. United Parcel Service, Inc., 840 F.3d 1126, 1132 (9th Cir. 2016) (quoting Allis–Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985)). This federal common law preempts the use of state contract law in the interpretation and enforcement of collective bargaining agreements ("CBAs"). Id.

To determine whether a state law claim is preempted under Section 301, the Ninth Circuit has articulated a two-part inquiry. The first step considers whether "a particular right inheres in state law, or instead, is grounded in a CBA." Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1060 (9th Cir. 2007). This determination focuses on the "legal character of the claim" and its independence from rights in the CBA. Matson, 840 F.3d at 1132 (quoting Livadas v. Bradshaw, 512 U.S. 107, 123–24 (1994)). "Only if a claim is 'founded directly on rights created by collective-bargaining agreements' is preemption warranted at this step." Id. (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 394 (1987)).

The second step of the inquiry considers "whether a state law right is substantially dependent on the terms of a CBA." Burnside, 491 F.3d at 1060. This analysis considers whether "the claim can be resolved by looking to versus interpreting the CBA." Id. If the claim requires interpretation of the CBA, it is preempted. Id. In this context, the Ninth Circuit has stressed a narrow definition of "interpret"—more is required than just "consider[ing]," "refer[ing] to," or "apply[ing]" the CBA. Id. (quoting Balcorta v. Twentieth Century–Fox Film Corp., 208 F.3d

1102, 1108 (9th Cir. 2000)).  Preemption of a state law claim is warranted only where the need to interpret the CBA "inheres in the nature of the plaintiff's claim" not simply because "the defendant refers to the CBA in mounting a defense."  Id. (quoting Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 691 (9th Cir. 2001) (en banc)).  "Speculative reliance" on the CBA also does not suffice to preempt a state law claim.  Humble v. Boeing Co., 305 F.3d 1004, 1008 (9th Cir. 2002).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).  "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."  Jackson v. Specialized Loan Servicing, LLC, 2014 WL 5514142, *6 (C.D. Cal. Oct. 31, 2014).  The court must resolve doubts regarding removability in favor of remanding the case to state court.  Id.

## B.  Judgment on the Pleadings

Defendant moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  "[A] Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved" without introduction of evidence beyond the pleadings.  5C Wright & A. Miller, Fed. Prac. & Proc. Civ. § 1367 (3d ed.).  Thus, judgment on the pleadings is proper when the moving party establishes that no material issue of fact remains to be resolved and it is entitled to judgment as a matter of law.  Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989).  However, a defendant may also raise a challenge for failure to state a claim upon which relief can be granted in a Rule 12(c) motion if she has already filed a responsive pleading.  Fed. R. Civ. P. 12(h)(2)(B); Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1980) ("Because it is only after the pleadings are closed that the motion for judgment on the pleadings is authorized (Rule 12(c)), Rule 12(h)(2) should be read as allowing a motion for judgment on the pleadings, raising the defense of failure to state a claim, even after an answer has been filed.").

To survive a Rule 12(c) motion that challenges the adequacy of the complaint, a complaint need not contain detailed factual allegations; rather a plaintiff must plead enough facts to state a claim for relief that is plausible on its face.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  For purposes of a Rule 12(c) motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false.  Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989) (citing Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984)).  In addition, all allegations of the non-moving party must be construed in favor of that party.  Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir. 1989).  However,

conclusory statements are not entitled to the presumption of truth.  Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012).

## IV.  DISCUSSION

### A.  Motion to Remand[1]

Plaintiff argues that removal was improper because Section 301 of the LMRA does not preempt his state law claims.  (See MTR.)  Plaintiff does not dispute that he was bound by a Collective Bargaining Agreement ("CBA") between All American Asphalt and Plaintiff's union, Laborers Local Union 1184 during his employment.[2]  However, Plaintiff asserts that all of his causes of action arise from state laws on race discrimination and related torts (under California's Fair Employment and Housing Act ("FEHA") § 12940, et seq.), whistleblower retaliation (under Lab. Code §§ 1102.5, 98.6, and 6310-6311), and wage and hour violations (under Lab. Code §§ 204, and 226(a)).  (MTR at 8.)  These statutory claims, Plaintiff asserts, do not require interpretation of the CBA.  (Id. at 9.)  Defendant counters that Plaintiff's claims arise out of the parties' CBA, and/or are so inextricably intertwined with the CBA that they require its interpretation.  (MTR Opp'n.)

The Court finds that (1) twelve out of Plaintiff's thirteen claims involve rights conferred upon employees by California law, not by the CBA; and (2) these claims do not require interpretation of the CBA.  Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1060 (9th Cir. 2007). However, Plaintiff's wage and hour claim under Cal. Lab. Code § 204 is preempted.

---

[1] Defendant argues that Plaintiff did not comply with Local Rule 7-3 and requests that the Court decline to consider the MTR.  (MTR Opp'n at 2.)  Under Local Rule 7–3, at least seven days prior to the filing of a motion, "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution."  Plaintiff counters that the parties met and conferred on issues of preemption and removal starting in early July 2020, and Plaintiff therefore complied with Local Rule 7-3.  (MTR Reply at 1-2.)  Because Defendant does not articulate any prejudice as a result of Plaintiff's alleged non-compliance, the Court will consider the merits of the motion.  Hibler v. Santander Consumer USA, Inc., 2013 WL 12137716, at *3 (C.D. Cal. Nov. 21, 2013).

[2] Defendant requests that this Court take judicial notice of the 2018 CBA between Defendant and Plaintiff's union.  Pursuant to Federal Rule of Evidence 201, "[a] court shall take judicial notice if requested by a party and supplied with the necessary information."  Fed. R. Evid. 201(d).  Plaintiff neither opposes Defendant's request nor disputes the validity of the CBA. The Court therefore GRANTS Defendant's RJN.  See Jones v. AT&T, 2008 WL 902292 (N.D. Cal. Mar. 31, 2008) ("[R]elevant case law supports the proposition that the Court may take judicial notice of a CBA in evaluating a motion to dismiss.").

---

### 1. Discrimination Claims

Plaintiff's First, Second, Third, Fourth, Fifth, Sixth, and Eleventh causes of action are based on alleged violations of California's Fair Employment and Housing Act ("FEHA") Section 12940, et seq.[3] (MTR at 7.)  A long line of Ninth Circuit cases have held that "state law discrimination claims under the FEHA do not require courts to interpret the terms of a CBA and are therefore not preempted by § 301 of the LMRA."  Schrader v. Noll Mfg. Co., 91 F.App'x 553, 555 (9th Cir. 2004); see also Detabali v. St. Luke's Hosp., 482 F.3d 1199, 1203 (9th Cir. 2007) (recognizing "long line of [Ninth Circuit] cases holding that FEHA employment discrimination claims are not ipso facto preempted by § 301 of the LMRA"); Brown v. Brotman Med. Ctr., Inc., 571 F.App'x 572, 574–75 (9th Cir. 2014) ("We have consistently held that the LMRA does not preempt FEHA claims.").  That is because generally "[t]he rights that FEHA claims assert are 'independent of collective-bargaining agreements.'"  Brown, 571 F.App'x at 575 (quoting Ramirez v. Fox Television Station, Inc., 998 F.2d 743, 748 (9th Cir. 1993)).  "This is true even where the CBA closely regulates the conduct that the plaintiff claims to be discriminatory."  Schrader, 91 F.App'x at 555.

Defendant appears to concede that Plaintiff's discrimination claims involve rights conferred by California law.  Defendant argues that the Court must interpret the CBA to resolve the allegations that underlie Plaintiff's discrimination and retaliation claims, including that Defendant wrongfully (1) transferred Plaintiff to various job plants, (3) reassigned Plaintiff's job duties, (3) failed to follow its safety regulations with respect to Plaintiff, and (4) terminated Plaintiff without eligibility for reinstatement.  (MTR Opp'n at 11-12.)  According to Defendant, these amount to alleged breaches of the CBA, which must therefore be interpreted and applied.  (Id. at 12.)  But the Ninth Circuit has squarely rejected this approach.  "A discrimination claim need not be preempted merely because certain aspects of the collective bargaining agreement govern work assignments and discharges."  Detabali, 482 F.3d at 1203.  In fact, although the parties may refer to the CBA "to determine the terms and conditions of [Plaintiff's] employment," Plaintiff's underlying causes of action are that Defendant discriminated against him "in applying and/or altering those terms and conditions."  Ramirez, 998 F.2d at 748.  Therefore, to the extent that Plaintiff's claims include allegations concerning procedures defined in the CBA, resolution of the claims will be based on Defendant's motivations for applying the CBA and not on the meaning of the CBA's terms.  Brown, 571 F.App'x at 575 (rejecting preemption argument where plaintiff alleged that employer failed to follow termination procedures in the CBA).  Thus, deciding whether race was a substantial motivating factor in Defendant's adverse employment actions against Plaintiff (including his transfer, reassignment, and termination) will not require interpretation of the CBA.

---

[3] These are (1) associational discrimination; (2) associational harassment in violation of Cal. Gov't Code § 12940(j); (3) hostile work environment in violation of Cal. Gov't Code § 12940(j); (4) discrimination based on race in violation of Cal. Gov't Code § 12940(a); (5) retaliation in violation of Cal. Gov't Code § 12940(h); (6) failure to prevent harassment, discrimination, and retaliation; and (11) wrongful termination in violation of public policy.  (See Compl.)

Defendant next argues that it "will cite to compliance with the CBA as legitimate, non-discriminatory, non-retaliatory reasons for the alleged conduct[,]" requiring the Court to interpret the relevant CBA provisions. (MTR Opp'n at 14.) But Defendant "cannot create removal jurisdiction merely by identifying a defense based on the terms of the CBA." Schrader, 91 F. App'x at 555. Rather, "the need to interpret the CBA must inhere in the nature of the plaintiff's claim." Id. As established above, that is not the case here.

Defendant finally asserts that because the CBA provides that employees will submit discrimination allegations to the CBA's grievance procedure, Plaintiff's discrimination claims are therefore subject to interpretation of the terms of the CBA. (MTR Opp'n at 15-16.) That argument also fails. As discussed above, Plaintiff's rights under FEHA are "independent of collective-bargaining agreements[,]" Brown, 571 F. App'x at 575, and they "cannot be removed by private contract," Cook v. Lindsay Olive Growers, 911 F.2d 233, 240 (9th Cir. 1990). Plaintiff has therefore not waived his right to seek relief for FEHA violations in state court.

## 2. Violation of Safety Regulations

Plaintiff's Seventh, Eighth, Ninth, and Eleventh causes of action allege violations to whistleblower protections in the Labor Code.[4] (See Compl.) Plaintiff alleges that he complained to Defendant about its disregard of safety protocols required by government and industry regulations, and was targeted for termination in retaliation. (Id. ¶¶ 33-35, 42.) Defendant argues that the Court must interpret the CBA to resolve Plaintiff's retaliation claims because it "is the sole source of the safety regulations and protocols." (MTR Opp'n at 10.) According to Defendant, the Court must interpret the safety regulations in the CBA to "determine whether there was a purported violation to substantiate a whistleblower claim in the first place." (Id. at 9-10.) Moreover, the CBA "provides a remedy for an employee whose employment terminates because of his refusal to perform unsafe work[.]" (Id. at 10.) After considering the Burnside factors, the Court disagrees.

First, Plaintiff's retaliation claims are founded on state law, rather than the CBA. California Labor Code Section 6310(a)(1) provides that an employer may not terminate or discriminate against an employee because they complained about unsafe working conditions or work practices. California Labor Code Section 6311 provides that an employer may not terminate or lay off an employee for refusing to work in unsafe conditions. Labor Code Section 1102.5 in turn provides that an employer "shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." Courts have repeatedly held that claims under these statutes arise under California law and are independent of the particular terms of the CBA. See, e.g., Smith v. Greyhound Lines, Inc., 2018 WL 6593365, at *7 (E.D. Cal.

---

[4] These are (7) violation of Cal. Lab. Code § 6310; (8) violation of Lab. Code § 6311; (9) violation of Lab. Code § 1102.5; and (11) wrongful termination in violation of public policy. (See Compl.)

Dec. 14, 2018) (Section 6310 "is an independent statutory right such that claims asserted under it are not preempted by § 301."); Lee v. Ardagh Glass, Inc., 2015 WL 1524398, at *6-7 (E.D. Cal. Jan. 20, 2015) (finding Section 6311 retaliation claim to be independent of the CBA); Rymel v. Save Mart Supermarkets, Inc., 30 Cal. App. 5th 853, 863 (2018) (finding plaintiff's claims based on whistleblower retaliation under Section 1102.5 and discipline in violation of public policies set by FEHA to be independent of CBA). Indeed, while the CBA "may provide guarantees related to grievances, Plaintiff's retaliation claim[s] are explicitly founded on state law." Smith, 2018 WL 6593365, at *7.

The dispute here is not whether the working conditions Plaintiff was subjected to were allowed under the CBA. Rather, Plaintiff argues that he was ordered to perform his job in dangerous conditions that contravened government and industry regulations, and after complaining to Defendant about their disregard of safety protocols, Defendant retaliated against him by targeting him for termination. (Compl. ¶¶ 33, 42.) Thus, Plaintiff's retaliation claims are not based on the CBA, nor do they require its interpretation.

In essence, Defendant's argument is that the Court may be required to interpret the CBA in assessing the merits of a defense to Plaintiff's claims. But, as established above, where "the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." Cramer, 255 F.3d at 691; see also Humble v. Boeing Co., 305 F.3d 1004, 1008 ("[D]efensive reliance on the terms of the CBA, mere consultation of the CBA's terms, or speculative reliance on the CBA will not suffice to preempt a state law claim."). To consider Defendant's defenses about safety regulations and protocols, the Court merely needs to consult the CBA. Plaintiff's retaliation claims are therefore not preempted.

### 3. Wage-Related Claims

Plaintiff's Ninth, Tenth, Eleventh, Twelfth, and Thirteenth causes of action assert violations of the California Labor Code.[5] (See Compl.)

### a. Cal. Lab. Code § 204

Plaintiff argues that two causes of action concern non-waivable wage claims based on California law – for unpaid wages under Section 204, and for failure to provide accurate wage statements under Section 226. (MTR at 15.) The Court disagrees as to Section 204. Section 204 establishes statutory requirements for the timely payment of wages, with a default requirement that all wages be paid at least twice a month. Cal. Lab. Code § 204(a). However, Section 204(c) provides that "when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered

---

[5] These are (9) violation of Labor Code § 1102.5; (10) violation of Labor Code § 98.6; (11) wrongful termination in violation of public policy; (12) violation of Labor Code § 204; (13) failure to provide accurate wage statements in violation of Labor Code § 226.

employees." Still, Plaintiff argues that this Section is non-waivable, citing Section 219(a) and a series of cases. However, although Lab. Code § 219(a) provides that its provisions may not be "contravened or set aside by a private agreement," "the general language of § 219(a) is modified by the more specific provisions of … [§] 204[.]" Hall v. Live Nation Worldwide, Inc., 146 F. Supp. 3d 1187, 1203 n.44 (C.D. Cal. 2015). And while Plaintiff cites a series of cases characterizing the right to compensation for all time worked as non-waivable and non-negotiable, none specifically concern Section 204. (MTR Reply at 7.)

Defendant argues that the CBA here establishes pay arrangements that differ from the statutory default:

> All wages shall be paid on a designated weekly payday and in no event shall the Contractor withhold more than five (5) working days…. Employers shall be paid prior to the ending of their regular shift. In the event an employee is not paid prior to the ending of his regular scheduled shift, he shall be compensated in increments of one-half (1/2) hour at the applicable overtime rate until such time as he does receive his pay.

(MTR Opp'n at 5-6 (citing Notice, Farkas Decl. ¶ 4, Exh. 2, p. 56 (Article XVI, Section B(1)).) Where, as here, "a governing CBA provides for pay arrangements that differ from the statutory default and meets the requirements of a statutory exemption, that particular labor right 'exists solely as a result of the CBA.'" Landy v. Pettigrew Crewing, Inc., 2019 WL 6245525, at *4 (C.D. Cal. Nov. 22, 2019). Because the Section 204 claims involve rights conferred by the CBA, they are therefore preempted at step one of the preemption analysis, and the Court need not address the second step (whether they require interpretation of the CBA).[6]

### b. Other Labor Code Violations

Defendant argues that the rest of Plaintiff's Labor Code claims are preempted because Plaintiff waived any such claims by agreeing to the CBA's grievance procedure. (MTR Opp'n at 7-8.) "In order for a grievance and arbitration provision to implicate preemption, the 'union-negotiated waiver of employees' statutory right to a judicial forum' must be 'clear and unmistakable.'" Vasserman v. Henry Mayo Newhall Mem'l Hosp., 65 F. Supp. 3d 932, 964 (C.D. Cal. 2014). Defendant argues the following provision includes such an explicit waiver:

> [A]ll employee disputes concerning violations of, or arising under … the California Labor Code Sections identified in California Labor Code section 2699.5, as amended, the California Private Attorneys General Act (Labor Code section 2698, et seq.), and federal, state and local law concerning wage-hour requirements, wage payment … shall be subject

---

[6] Because Section 226 does not include any provision for alternative CBA arrangements and Defendant does not point to any such information, the Court finds no basis for holding that this claim involves rights conferred by the CBA.

to and must be processed by the employee pursuant to the procedures set forth in this Appendix C as the sole and exclusive remedy.

(MTR Opp'n at 7 (citing Notice, Farkas Decl. ¶ 4, Exh. 2, p. 87 (Appendix C, Section A)).)  The "California Labor Code Sections identified in California Labor Code section 2699.5" include more than one hundred sections, among them sections 98.6, 204, 226, and 1102.5.  (MTR Opp'n at 7.)  But "[w]hen a CBA's grievance and arbitration procedure does not directly reference the statutes at issue, courts have concluded that the agreement does not contain a 'clear and unmistakable waiver' of an employee's right to a judicial forum."  Vasserman, 65 F. Supp. 3d at 964 (emphasis added); see also Choate v. Celite Corp., 215 Cal. App. 4th 1460, 1467 (2013) ("It must be specific, and mention either the statutory protection being waived or at a minimum, the statute itself.").  Courts have therefore rejected finding a "clear and unmistakable waiver" where, as here, "the alleged incorporation of the statutory provisions … is one step removed from their alleged incorporation in the CBA."  Martinez v. J. Fletcher Creamer & Son, Inc., 2010 WL 3359372, at *5 (C.D. Cal. Aug. 13, 2010).  The Court finds that the CBA does not waive Plaintiff's statutory rights under the Labor Code, and these claims are therefore not preempted.

**B.  Motion for Judgment on the Pleadings**

The Court will consider Defendant's MJP as to Plaintiff's Section 204 claims.  Defendant's MJP, which mirrors its opposition to Plaintiff's MTR, asserts that these claims should be dismissed because they are preempted by the LMRA, and Plaintiff failed to exhaust the internal grievance procedures set forth in the CBA disputes concerning wage-hour requirements and wage payment.  (MJP at 11-12.)  As explained above, the Court agrees that Plaintiff's Section 204 claims are subject to the CBA, and DISMISSES these claims for failure to exhaust the internal grievance procedures set forth in the CBA.  See Bradford, 2020 WL 2747767, at *4 (dismissing Section 204 claim after finding that it was preempted by the LMRA and plaintiff failed to exhaust the CBA's arbitration procedures, but remanding remaining wage and hour claims).

**C.  Supplemental Jurisdiction**

Defendant requests that the Court exercise supplemental jurisdiction over any claims not preempted by Section 301.  (MTR Opp'n at 16-17.)  District courts can exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  However, the Court may decline to exercise supplemental jurisdiction over a state law claim if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  The Supreme Court has held that supplemental jurisdiction is discretionary and that "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties."  United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

Having dismissed Plaintiff's Section 204 claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. §

1367(c)(3).  Accordingly, Plaintiff's motion to remand the remainder of his claims is GRANTED and Defendant's motion for judgment on the pleadings as to these claims is DENIED as MOOT.

<h2 style="text-align:center">V.    CONCLUSION</h2>

For the reasons above, Plaintiff's Section 204 claim is DISMISSED.  The remainder of Plaintiff's claims (causes of action 1-11 and 13) are REMANDED to California Superior Court of Riverside.  Defendant's MJP is DENIED as MOOT as to these claims.

**IT IS SO ORDERED.**

---